# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 24, 2009        Decided May 28, 2010

No. 08-7142

BRITT A. SHAW, ET AL.,
APPELLANTS

v.

MARRIOTT INTERNATIONAL, INC.,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:05-cv-01138-GK)

———

*Paul D. Cullen Sr.* argued the cause for appellants. With him on the briefs was *Joyce E. Mayers*. *Daniel E. Cohen* entered an appearance.

*Charles P. Scheeler* argued the cause for appellee. With him on the brief were *Holly Drumheller Butler*, *Bruce V. Spiva*, and *Kathleen R. Hartnett*. *Benjamin S. Boyd* entered an appearance.

Before: SENTELLE, *Chief Judge*, and GRIFFITH and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*: Plaintiffs brought this action under the District of Columbia consumer protection statute to challenge the pricing practices of Marriott's Russian hotels. The district court granted summary judgment in favor of Marriott. We affirm in part and reverse in part.

## I.

The plaintiffs allege a scheme by Marriott International to overcharge guests at its Russian hotels. Customers reserving rooms at Marriott hotels in Russia received their rate quotes in U.S. dollars. Marriott did not inform customers until checkout that payment would be due in Russian rubles, which the hotels calculated at an exchange rate less favorable than the official rate set by the Central Bank of Russia. As a result, guests paid up to 18 percent more than the price they had been quoted when making their reservations.

Plaintiff Britt Shaw's experience shows how Marriott's system worked. In April 2005, Shaw made a one-night reservation at the Marriott Renaissance Moscow during a business trip for his law firm. He was quoted a price of $425. When Shaw checked out of the hotel, he learned that he could only pay in rubles, not in dollars. Marriott used its own exchange rate of $1 to 32 rubles and charged Shaw 13,600 rubles for what he had been told would be a $425 room. At that day's official exchange rate of $1 to 27.7543 rubles, 13,600 rubles equaled $490. Shaw paid $65 more than the price quoted to him when he reserved his room. The remaining plaintiffs were treated similarly.

Shaw and the other plaintiffs filed suit in District of Columbia Superior Court on behalf of themselves and similarly situated customers. They alleged Marriott's pricing practices violated the District of Columbia Consumer Protection Procedures Act (CPPA), D.C. CODE §§ 28-3901 to -3913 (2009), and constituted unjust enrichment. Marriott removed the case to federal district court under 28 U.S.C. § 1332(d) (2006).

The other named plaintiffs are the Center for Strategic and International Studies (CSIS), a Washington, D.C. think tank that funded its employees' professional travel to Russia; Sarah Mendelson, a CSIS employee whose business takes her frequently to Russia; and Neal Charness, a Michigan resident who stayed at Marriott hotels during personal visits to Russia.

Plaintiffs moved for class certification, and the parties filed cross-motions for summary judgment. The district court granted summary judgment for Marriott, mooting the motion for class certification. *Shaw v. Marriott Int'l, Inc.*, 570 F. Supp. 2d 78, 89 (D.D.C. 2008). The court held that CSIS, Shaw, and Mendelson were not "consumers" entitled to protection under the CPPA because CSIS was a business entity and Shaw and Mendelson stayed at Marriott's Russian hotels only for business purposes. *Id.* at 85. The court also held that Charness, as a Michigan resident, could not invoke the protection of the CPPA because D.C. law did not govern his dispute with Marriott, a Delaware corporation headquartered in Maryland. *Id.* at 88. Finally, the court granted summary judgment for Marriott on plaintiffs' unjust enrichment claim. *Id.* at 89.

On appeal, plaintiffs drop their claim of unjust enrichment and challenge only the district court's reading and

application of the CPPA. We have jurisdiction under 28 U.S.C. § 1291, conclude that Shaw and Mendelson lack standing to pursue their actions in federal court, and affirm the judgment of the district court on the claims of CSIS and Charness.

## II.

At the outset, Marriott argues that CSIS, Mendelson, and Shaw lack standing to bring this suit. "Because the question of standing goes to our jurisdiction over the case, we must consider it first." *AT&T Corp. v. FCC*, 317 F.3d 227, 237 (D.C. Cir. 2003). To be heard in federal court, every plaintiff must satisfy the "irreducible constitutional minimum" of Article III standing: injury-in-fact, causation, and redressability. *Young Am.'s Found. v. Gates*, 573 F.3d 797, 799 (D.C. Cir. 2009) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). To demonstrate standing on a motion for summary judgment, a plaintiff "must set forth by affidavit or other evidence specific facts," establishing each of these three elements. *Lujan*, 504 U.S. at 561 (internal quotation marks omitted).

Marriott contends that it could not have caused any harm to CSIS and Mendelson because CSIS employees stayed only at Marriott-franchised hotels, which are not owned and operated by Marriott, but by independent corporations. CSIS and Mendelson have met their burden. They have proffered evidence that Marriott was responsible for their loss because it exercises some control over the franchised hotels, including capping the rates they charge for rooms. *See* Plaintiffs' Statement of Undisputed Facts ¶¶ 9–11, 20, 28–32.

CSIS has standing. It used its own funds to pay for stays at Marriott's Russian hotels, and suffered pecuniary harm as a result of Marriott's pricing practices. *See Ciba-Geigy Corp. v. EPA*, 801 F.2d 430, 438 n.10 (D.C. Cir. 1986) ("[E]conomic loss clearly constitutes a distinct and palpable injury . . . .") (internal quotation marks omitted). Damages under the CPPA would remedy that loss. Article III requires no more.

Whether Shaw and Mendelson have standing is more complicated. They concede having suffered no pecuniary injury because their employers paid for their hotel stays. *See* Reply Br. at 27–28. Nonetheless, they maintain that they have suffered a legally cognizable injury because Marriott invaded their interest in being free from improper trade practices, an interest protected under the CPPA. The deprivation of such a statutory right may constitute an injury-in-fact sufficient to establish standing, even though the plaintiff "would have suffered no judicially cognizable injury in the absence of [the] statute." *Warth v. Seldin*, 422 U.S. 490, 514 (1975); *see also Zivotofsky ex rel. Ari Z. v. Sec'y of State*, 444 F.3d 614, 619 (D.C. Cir. 2006) ("Although it is natural to think of an injury in terms of some economic, physical, or psychological damage, a concrete and particular injury for standing purposes can also consist of the violation of an individual right conferred on a person by statute.").

But the violation of a statute can create the particularized injury required by Article III only when "an individual right" has been "conferred on a person by statute." *Zivotofsky*, 444 F.3d at 619. The question is whether Shaw and Mendelson are within the class of individuals protected by the CPPA. To answer that, we must apply the substantive law of the District of Columbia. *Smith v. Wash. Sheraton Corp.*, 135 F.3d 779, 782 (D.C. Cir. 1998). "Our duty, then, is to achieve the same

outcome we believe would result if the District of Columbia Court of Appeals considered this case." *Novak v. Capital Mgmt. & Dev. Corp.*, 452 F.3d 902, 907 (D.C. Cir. 2006).

The CPPA provides that "[a] person . . . may bring an action under this chapter in the Superior Court of the District of Columbia seeking relief from the use by any person of a trade practice in violation of a law of the District of Columbia." 28 D.C. CODE § 3905(k)(1). Though the statute defines "person" broadly, *id.* § 3901(a)(1), the District of Columbia Court of Appeals has held that the CPPA protects only consumers, *see Ford v. ChartOne, Inc.*, 908 A.2d 72, 81 (D.C. 2006); *Dist. Cablevision Ltd. P'ship v. Bassin*, 828 A.2d 714, 717 (D.C. 2003).

We first look to the statute's text to determine whether Shaw and Mendelson engaged in "consumer" transactions within the meaning of the Act. The CPPA defines "consumer" both as a noun and an adjective. In relevant part, the noun "consumer" means "a person who does or would . . . receive consumer goods or services," D.C. CODE § 28-3901(a)(2), or "a person who does or would provide the economic demand for" "any act which does or would create, alter, repair, furnish, make available, provide information about, or, directly or indirectly, solicit or offer for or effectuate, a sale, lease or transfer, of consumer goods or services," *id.* § 3901(a)(2), (6). When used as an adjective, as in the phrase "consumer goods," the word means "primarily for personal, household, or family use." *Id.* § 3901(a)(2). We read these provisions together to define "consumer" as a person who receives or demands goods or services that are primarily for personal, household, or family use.

Precedent from the District of Columbia Court of Appeals confirms this reading of the Act. In *Ford v. ChartOne*, the District of Columbia Court of Appeals held that a person who had purchased his medical records for the purpose of future litigation had engaged in a consumer transaction under the CPPA because pursuing compensation for injuries was a personal motive. 908 A.2d at 83. *Ford* also noted with approval a district court decision that held that a cab driver's purchase of gasoline was not covered by the CPPA, *id.* at 84 n.12, because it was made "in connection with his role as an independent businessman," and not primarily for personal use, *id.* at 81 (quoting *Mazanderan v. Indep. Taxi Owners' Ass'n*, 700 F. Supp. 588, 591 (D.D.C. 1988)). These cases teach that purpose is the touchstone of the CPPA's definition of "consumer" and that the statute does not reach transactions intended primarily to promote business or professional interests.

Plaintiffs argue that the District of Columbia Court of Appeals has not always focused on the purpose of the transaction, but has looked instead to the role of the purchaser within the supply chain. In *Adam A. Weschler & Son, Inc. v. Klank*, the court held that an individual who purchased an antique chest for resale was not a consumer under the CPPA. 561 A.2d 1003, 1005 (D.C. 1989). In dicta, the court, focusing on the difference between retail and wholesale purchasers, stated that if a "purchaser is not engaged in the regular business of purchasing this type of goods or service and reselling it, then the transaction will *usually* fall within the Act." *Id.* (emphasis added). But usually does not mean always, and an individual who purchases a good without the intent to resell is not always a consumer. That is why the *Ford* court indicated that the CPPA would not apply to a business's purchase of office supplies, "even though such goods would

not be resold." 908 A.2d at 84 n.12 (citing *Mazanderan*, 700 F. Supp. at 591).

Under the CPPA, an employer's payment for its employee's hotel stay is not meaningfully different than its purchase of a stapler for the office. Both are done for a business purpose. Shaw stayed in Marriott's Moscow hotels only while meeting with his law firm's clients, and Mendelson did so only while travelling on behalf of CSIS. Appellants' Br. at 8–9. Both stayed in the hotels to further the business purposes of their employers. They did not engage in consumer transactions within the meaning of the Act and are not entitled to its protections. Because they lack any rights under the Act, they could not have suffered any injury-in-fact stemming from a violation of the statute. They accordingly lack Article III standing to sue in federal court.

Following oral argument, plaintiffs filed a motion asking us to direct the district court to remand the entire case to the District of Columbia Superior Court should we conclude that plaintiffs lack standing. *See* Appellants' Motion to Remand at 1 (Oct. 5, 2009) (moving "for a mandate directing that the District Court remand *this matter* to the Superior Court for the District of Columbia" (emphasis added)). Section 1447(c) of Title 28 provides that a "case" removed from state court "shall be remanded" "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction."

Plaintiffs' argument for remand is foreclosed by *Wisconsin Department of Corrections v. Schacht*, 524 U.S. 381 (1998). In *Schacht*, the Supreme Court refused the very remand the plaintiffs seek. *Schacht* held that § 1447(c) did not require a district court to relinquish its removal jurisdiction

over a case with multiple claims once it determined that one of the claims was barred by the Eleventh Amendment. *Id.* at 392. Because "[a]n ordinary reading of the language indicates that [§ 1447(c)] refers to an instance in which a federal court 'lacks subject matter jurisdiction' over a 'case,' and not simply over one claim within a case," § 1447(c) does not require remand of the entire case in these circumstances. *Id.* (quoting 28 U.S.C. § 1447(c)). The federal court may hear the claims for which federal jurisdiction exists. *Cf. Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1006 (9th Cir. 2001) (determining, in a case in which a plaintiff lacked standing to sue only one of multiple defendants, that *Schacht* prohibited remand of the entire case). We therefore remand the claims of Shaw and Mendelson to the district court so that it may determine the appropriate disposition.

## III.

CSIS and Charness challenge the district court's grant of summary judgment against them. We will affirm the district court's grant of summary judgment where, viewing the record in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56; *see U.S. Postal Serv. v. Am. Postal Workers Union*, 553 F.3d 686, 692 (D.C. Cir. 2009).

Marriott argues that CSIS cannot state a claim under the CPPA because its employees stayed in Marriott's Russian hotels only to further its business purposes and did not engage in "consumer transactions" within the meaning of the Act. We agree. As we already discussed in concluding that Shaw and Mendelson lack standing, the CPPA does not protect businesses engaged in commercial activity. *See* Part II, *supra*.

CSIS employees stayed in Marriott's Russian hotels to promote the policy objectives of CSIS, not "primarily for personal, household, or family" reasons. D.C. CODE § 28-3901(a)(2). CSIS engaged in no consumer transactions within the meaning of the CPPA, so we affirm the district court's grant of summary judgment to Marriott on CSIS's claim.

We also agree with Marriott that Charness cannot state a claim under the CPPA. Charness invokes the protection of the Act even though he is a resident of Michigan, Marriott is a Delaware corporation headquartered in Maryland, and nothing related to the dispute between the two occurred in the District of Columbia.

We apply the law of the forum—in this case, the District of Columbia—to determine whether the law of the District of Columbia—in this case, the CPPA—reaches this dispute. *See Muir v. Navy Fed. Credit Union*, 529 F.3d 1100, 1107 (D.C. Cir. 2008). District of Columbia courts apply two tests to determine which jurisdiction's law should govern a dispute: a "governmental interests analysis" and a "most significant relationship" test. *See Oveissi v. Islamic Republic of Iran*, 573 F.3d 835, 842 (D.C. Cir. 2009) (discussing *Hercules & Co. v. Shama Rest. Corp.*, 566 A.2d 31, 40–41 & n.18 (D.C. 1989)); *see, e.g.*, *Washkoviak v. Student Loan Mktg. Ass'n*, 900 A.2d 168, 180 (D.C. 2006) (following this approach when making choice-of-law determinations under the CPPA). Although these tests may at times produce conflicting results, in this case both confirm that D.C. law does not govern Charness's dispute with Marriott.

The "governmental interests analysis" requires the court to "evaluate the governmental policies underlying the applicable laws and determine which jurisdiction's policy

would be most advanced by having its law applied to the facts of the case under review." *Hercules*, 566 A.2d at 41. The District of Columbia has an interest in protecting its own citizens from being victimized by unfair trade practices and an interest in regulating the conduct of its business entities. The Act speaks to both. But Charness is not a citizen of the District and neither the Russian Marriott hotels nor their corporate head is a business entity located in the District. The District has little interest in the resolution of their dispute.

Charness fares no better under the most significant relationship test. When using this test, the District of Columbia Court of Appeals looks to the factors set forth in the *Restatement (Second) of Conflict of Laws*: (1) "the place where the injury occurred"; (2) "the place where the conduct causing the injury occurred"; (3) "the domicile, residence, nationality, place of incorporation and place of business of the parties"; and (4) "the place where the relationship, if any, between the parties is centered." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(2) (1971); *see Oveissi*, 573 F.3d at 842. Neither Charness's injury nor Marriott's conduct occurred in the District of Columbia. Neither party has a domicile, residence, place of incorporation, or principal place of business in Washington, and it is clear that the relationship between them is not centered in the District. In sum, the *Restatement* factors confirm that D.C. law does not apply.

Charness contends that the District of Columbia has an interest in applying the CPPA to Marriott in this case because Marriott held itself out as a resident of the District. Marriott does list a D.C. address on its website and on corporate documents, but all mail sent to that address is forwarded to Bethesda. The company has no corporate office in Washington, D.C. and the call centers and Internet servers

through which plaintiffs made their reservations are not in the District. Although we are willing to assume Marriott's representations give the District of Columbia some interest in this dispute, that interest does not outweigh the interest of Maryland in ensuring corporations domiciled there do not mislead consumers or of Michigan in protecting its citizens from unfair trade practices. Moreover, Marriott's representations do not implicate any of the *Restatement* factors.

Charness argues that no constitutional principles would be offended were he permitted to invoke the CPPA against Marriott. That may be so, but it is no answer to the more fundamental question: Does the CPPA protect him on these facts? As we have said, it does not. We therefore affirm the district court's grant of summary judgment for Marriott.

## IV.

We reverse the judgment entered against plaintiffs Shaw and Mendelson because they lack standing to sue in federal court. We remand those claims to the district court for further proceedings consistent with this opinion. We affirm the judgment in favor of Marriott with respect to the remaining plaintiffs.

*So ordered.*